UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DZ BANK AG DEUTSCHE
ZENTRAL-
GENOSSENSCHAFTBANK,
FRANKFURT AM MAIN,

                 Plaintiff,

     v.

CHOICE CASH ADVANCE, LLC, et
al.,

                Defendants.

CASE NO. C11-1312JLR

ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT
AND MOTION FOR LEAVE TO
FILE AN AMENDED ANSWER

## I.  INTRODUCTION

Before the court are three motions:  (1) Defendant Choice Cash Advance, LLC,

f/k/a Choice Insurance Agency, LLC's ("Choice Insurance") motion for summary

judgment (Dkt. # 41); (2) Plaintiff DZ Bank AG Deutsche Zentral-Genossenschaftbank,

Frankfurt AM Main, New York Branch's ("DZ Bank") cross motion for summary

judgment (Dkt. # 45); and (3) Choice Insurance's motion for leave to file a second

ORDER- 1

1   amended answer (Dkt. # 53).  The court has considered the motions, all submissions filed

2   in support and opposition thereto, the balance of the record, and the applicable law.

3   Being fully advised, the court GRANTS DZ Bank's motion for summary judgment and

4   DENIES Choice Insurance's motions for summary judgment and to file a second

5   amended answer.[1]

## II.      BACKGROUND

7        This matter arises out of the failure and subsequent bankruptcy of an insurance

8   agency franchiser and the cascading effects that failure had upon one of its franchisees

9   and others involved in the franchise's financing.

### A.  Creation of Choice Insurance

11       In 2007, Defendant Louis Meyer created Choice Insurance in preparation for his

12  acquisition of five insurance agencies.  (*See* Meyer Dep. (Dkt. # 48-1) at 14:11-18;

13  Compl. (Dkt. # 1) ¶ 5; Am. Ans. (Dkt. # 27) ¶ 5 (admitting allegations contained within

14  paragraph 5 of complaint).)  Mr. Meyer is the sole member of Choice Insurance.  (*Id.*)

15  On January 28, 2008, Choice Insurance entered into an agreement acquiring substantially

16  all of the assets of five insurance agencies for the purchase price of $1,911,235.20.

17  (Probst Decl. (Dkt. # 48-3) ¶ 10, Ex. 1.)

18  //

---

21       [1] No party has asked for oral argument with respect to any of the three motions before the
22  court, and the court deems oral argument unnecessary.

**B. Franchising Agreement with BCC**

On January 31, 2008, Choice Insurance entered into a Franchise Agreement with Brooke Credit Corporation ("BCC"), which is not a party to this action.  (*See* Franchise Agreement (Dkt. # 50-1).)  Under this agreement, BCC promised to provide certain services to Choice Insurance in exchange for various fees and to serve as the "agent of record" for all insurance policies which Choice Insurance sold.  (*See id.* ¶¶ 5.1-5.2, 7.1-7.2, 15.)  For example, Choice Insurance agreed to pay BCC $165,000.00 for each franchise location.  (*Id.* ¶ 4.1.)  Choice Insurance also agreed to pay BCC other additional fees for the services that BCC promised to provide pursuant to the Franchise Agreement.  (*Id.* ¶¶ 4.2-4.4.)  The Franchise Agreement contains an integration clause, which states in pertinent part that the "Agreement . . . fully expresses the entire understanding and agreement between the parties . . . with respect to the subject matter . . . ."  (*Id.* ¶ 28.1.)

In late 2008, BCC filed for bankruptcy and consequently breached its contractual obligations to Choice Insurance under the Franchise Agreement.  (*See* Meyer Decl. (Dkt. # 49-1) ¶¶ 4-5; *see also* Choice Resp. (Dkt. # 49) at 4.)  BCC's breach of the Franchise Agreement had a significantly adverse affect on the ability of Choice Insurance to operate its business successfully.  (*See id.*)

**C. Financing Agreements with BCC**

On the same day that they executed their Franchise Agreement, BCC, as lender, and Choice Insurance, as borrower, also entered into a Promissory Note (known as Promissory Note No. 6779) and an Agreement for Advancement of Loan (collectively, "the Loan Agreement"), in which BBC agreed to loan Choice Insurance $1,771,715.20

towards Choice Insurance's purchase of the assets of the five insurance agencies referenced above. [2] (*Id.* ¶ 11, Ex. 2.) Promissory Note No. 6779 specifically references the "Agreement for Advancement of Loan dated January 31, 2008" under the heading "ADDITIONAL TERMS." (*Id.* Ex. 2 at 1.) Likewise, the Agreement for Advancement of Loan specifically references the "Promissory Note . . . in the amount of $1,771,715.20," and is expressly "subject to" its "terms and conditions." (*Id.* at 27 (paragraph one of terms and conditions).) As Choice Insurance has recognized (*see* Choice Mot. at 2-3), Agreement for Advancement of Loan contains an integration clause, which states that it "represents the entire agreement between the parties hereto and shall supersede and take precedence over any and all prior agreements, arrangements or understandings between the parties related to the subject matter thereof." (Probst Decl. Ex. 2 at 36 (paragraph 37).)

**D.  Terms of the Loan Agreement**

Under Promissory Note No. 6779, Choice Insurance's failure to make a payment on time is an event of default. (Probst Decl. Ex. 2 (Note) at 2 (Default Section at #1) ("I will be in default if . . . I fail to make a payment on time or in the amount due.").) Additionally, Choice Insurance's failure to remain solvent is an event of default. (*Id.* at 2 (Default Section at #5) (I will be in default if . . . I . . . become insolvent (either because my liabilities exceed my assets or I am unable to pay to pay my debts as they become due) . . . .").)

---

[2] Mr. Meyer wrote an additional check of approximately $190,000.00 for the down payment needed to purchase the assets of the five agencies. (Meyer Dep. at 63:20-64:4.)

1       Under Promissory Note No. 6779, upon an event of default, the lender, who in this

2   case is DZ Bank as the assignee of BCC, may:  (1) accelerate that balance due under

3   Promissory Note No. 6779, (2) exercise set-off rights, (3) demand additional collateral,

4   (4) refuse to make additional advances to Choice Insurance, and/or (5) use any remedy

5   available under state or federal law.  (*Id.* at 2 (Remedies Section).)  Under the section

6   entitled "WAIVER," Choice Insurance expressly waives its rights to require the lender

7   to: (1) demand payment of amounts due (presentment); (2) obtain official certification of

8   nonpayment (protest); and /or (3) give notice that amounts due have not been paid (notice

9   of dishonor).  (*Id.* at 2 (Waiver Section).)

10      With regard to default, the Agreement for Advancement of Loan provides that DZ

11  Bank "may upon written notice to [Choice Insurance], declare [Choice Insurance] to be in

12  default if . . . [Choice Insurance] fails to fulfill or perform any term, condition or

13  obligation set forth in any Loan Document, including without limitations [Choice

14  Insurance's] failure to make payments when due in accordance with the terms of the

15  Note." (*Id.* Ex. 2 (Agreement for Advancement of Loan) ¶ 13.)  The Agreement for

16  Advancement of Loan also lists a variety of remedies and effects of default which are

17  expressly "[i]n addition to any remedy or right [DZ Bank] has under any Loan

18  Document, the Uniform Commercial Code or other law, and in addition to any effect of

19  default set forth in any other Loan Document, the Uniform Commercial Code or other

20  law . . . ." (*Id.* Ex. 2 ¶ 14.)

21      With regard to the interpretation of the Note, the Agreement for Advancement of

22  Loan states:

**Interpretation.** Provisions in the Loan Document are intended to be cumulative. To the extent that the provisions of this Agreement conflict with those of any other Loan Document, the provision of which provides [DZ Bank] most protection and grants [DZ Bank] the greatest rights shall control. Likewise, if the provisions of any Loan Document conflict with those of any other Loan Document, the provision which provides [DZ Bank] most protection and grants [DZ Bank] the greatest rights shall control.

(*Id.* Ex. 2 ¶ 38.)

## E.  Security for the Note

To secure Choice Insurance's obligations under the Note, Choice Insurance granted BCC a blanket security interest in all of Choice Insurance's assets pursuant to a commercial security agreement. (Probst Decl. ¶ 13, Ex. 4.) The security interest included the assets of the five new agencies that Choice Insurance acquired in the January 28, 2008, purchase agreement. (*Id.*) BBC properly perfected its security interest in the collateral by filing a Uniform Commercial Code ("UCC") Financing Statement with the Washington Secretary of State. (*Id.* ¶ 14, Ex. 5.) In addition, Mr. Meyer and his wife, Defendant Lynn Meyer, each unconditionally guaranteed Choice Insurance's obligations under the Note pursuant to a Guaranty. (*Id.* ¶ 12, Ex. 3.) Pursuant to the Note, commercial security agreement, personal guaranties, and other loan documents executed by Choice Insurance, BCC disbursed $1,771,715.20 towards Choice Insurance's purchase of the assets of the five agencies. (*Id.* ¶ 15.)

## F.  Assignment of Note to BCF

BCC assigned the Note and personal guarantees to Brooke Credit Funding, LLC ("BCF"), and BCF pledged the Note and personal guaranties to its lenders as security.

ORDER- 6

1    (*Id.* ¶ 17.)  BCF's senior secured creditors are DZ Bank and Autobahn Funding

2    Company, LLC ("Autobahn").  (*Id.*)  By written agreement, Autobahn appointed DZ

3    Bank as its agent and authorized DZ Bank to enforce its rights under the Note and

4    personal guaranties in DZ Bank's name.  (*Id.*)

5    **G.  BCF's Default on its Obligations to DZ Bank**

6    BCF defaulted on its obligations to DZ Bank.  (*Id.*)  On October 30, 2008, DZ

7    Bank and BCF entered into a Surrender of Collateral, Consent to Strict Foreclosure,

8    Release and Acknowledgment Agreement (the "Surrender of Collateral").  (*Id.* ¶¶ 17-20,

9    Ex. 6.)  Under Section 1.3.1 of the Surrender of Collateral, DZ Bank has full ownership

10   of the Loan and personal guaranties.  (*Id.* ¶ 19, Ex. 6.)  On October 31, 2008, DZ Bank

11   and BCF entered into an Omnibus Assignment Agreement whereby BCC further

12   confirmed that DZ Bank has full ownership of BCF's rights as BCC's assignee under the

13   Note and personal guaranties.  (*Id.* ¶ 20, Ex. 7.)

14   **H.  Choice Insurance's Acknowledgment of its Obligations to DZ Bank**

15   In conjunction with the transfer of the Note and personal guaranties from BCF to

16   DZ Bank, Choice Insurance executed an Acknowledgment and Agreement, under which

17   Choice Insurance affirmed its obligations to DZ Bank under the Note (the

18   "Acknowledgement").  (*Id.* ¶ 21, Ex. 8.)  Specifically, the Acknowledgement stated that

19   
20   
21   

> [Choice Insurance] hereby confirm[s] [its] obligation to repay the Loan, together with all interest, fees and other amounts specified in the documents and agreements relating to the Loan . . . , in accordance with the terms thereof, without condition or deduction for any counterclaim, defense, recoupment or setoff.

22   

ORDER- 7

1  (*Id.* Ex. 8 at 1 (paragraph (i)).)  The Acknowledgement also recites that it "is a 'Loan

2  Document' and a breach of our obligations hereunder will constitute an 'Event of

3  Default' under the Loan."  Choice Insurance has admitted executing the

4  Acknowledgement.  (*See* Dkt. # 45-5 (attaching Choice Insurance's responses to requests

5  for admission) at 3, 32, 34.)

6  **I.   Multiple Forbearance Agreements Between DZ Bank and Choice Insurance**

7  On March 10, 2009, Choice Insurance and DZ Bank entered into a forbearance

8  agreement under which DZ Bank agreed to (1) reduce the principal balance of the Note

9  by 15% (to $1,524,219.66), and (2) require only interest payments for a period of six

10  months—from May 15, 2009, to October 15, 2009 (the "March 2009 Forbearance

11  Agreement").  (*Id.* ¶ 22, Ex. 9.)  Choice Insurance made payments to DZ Bank totaling

12  $52,119.57 under the March 2009 Forbearance Agreement.  (*Id.*)

13  On October 19, 2009, Choice Insurance and DZ Bank entered into a second

14  forbearance agreement under which DZ Bank agreed to extend Choice Insurance's

15  interest-only payments by an additional two months—from November 15, 2009, to

16  December 15, 2009 (the "October 2009 Forbearance Agreement").  (*Id.* ¶ 23, Ex. 10.)

17  Choice Insurance made payments to DZ Bank totaling $17,381.95 under the December

18  2009 Forbearance Agreement.  (*Id.*)  From January 2010 until May 2010, Choice

19  Insurance resumed making full principal and interest payments under the Note by paying

20  DZ Bank a total of $73,308.50.  (*Id.* ¶ 24.)

21  On May 19, 2010, Choice Insurance and DZ Bank entered into a third forbearance

22  agreement under which DZ Bank agreed to accept reduced payment of $3,000.00 in

1  principal, plus accrued interest, for three months, beginning June 15, 2010, through

2  August 15, 2010 (the "May 2010 Forbearance Agreement").  (*Id.* ¶ 25, Ex. 11.)  Choice

3  Insurance made payments to DZ Bank totaling $29,807.28 under the May 2010

4  Forbearance Agreement.  (*Id.*)  From September 2010 until January 2011, Choice

5  Insurance resumed making full principal and interest payments under the Note by paying

6  DZ Bank a total of $73,941.30.  (*Id.* ¶ 26.)

7        In each of the foregoing forbearance agreements, Choice Insurance expressly

8  acknowledged:

9      . . . [O]n November 4, 2008, DZ Bank . . . foreclosed on all of the franchise
      loans . . . previously pledged to DZ Bank by [BCC].  DZ Bank is the owner
10    of [Choice Insurance's] loan and all notes that [Choice Insurance] executed
      in connection with the loan (collectively, the "Note").  DZ Bank is in
11    possession of the Note, which gives it priority over any other claims
      regarding to [sic] payments of principal and interest due under the Loan
12    Agreement.

13  (*Id.* Exs. 9, 10, 11.)

14  **J.  Choice Insurance's Failure to Make Payments Required under the Loan**
        **Agreement**

15

16        Choice Insurance failed to make the payment due on the Loan Agreement on

  February 15, 2011.  (*Id.* ¶ 27.)  On February 16, 2011, Oak Street Financing, LLC ("Oak
17

18  Street"), the company serving the Loan Agreement on behalf of DZ Bank, inquired as to

  the status of the delinquent payment.  (*Id.* ¶ 28, Ex. 12.)  Mr. Meyer replied by stating
19

20  that Choice Insurance "can't make the payment."  (*Id.* ¶ 28, Ex. 12.)  On February 21,

  2011, Oak Street asked Mr. Meyer to elaborate as to why Choice Insurance could not
21

22  make the February 11, 2011 payment.  (*Id.* ¶ 29, Ex. 13.)  Later that day, Mr. Meyer

ORDER- 9

1  responded, "I don't have the funds to pay and all my credit cards are maxed out, so I

2  can't make the payment."  (*Id.*)

3          On March 23, 2011, Choice Insurance and DZ Bank entered into a fourth

4  forbearance agreement under which Choice Insurance would resume paying reduced

5  payments of $3,000.00 in principal plus accrued interest on April 15, 2011, and continue

6  through to August 15, 2011, with the outstanding payments due upon maturity of the

7  Note (the "March 2011 Forbearance Agreement").  (*Id.* ¶ 33, Ex. 17.)  Choice Insurance

8  failed to make any payments to DZ Bank under the March 2011 Forbearance Agreement

9  or thereafter.  (*Id.* ¶ 35.)[3]

10         On March 1, 2011, Mr. Meyer further elaborated on Choice Insurance's inability

11 to make payments on the Loan Agreement by stating that he and Ms. Meyer's personal

12 income had dropped from $918,000.00 in 2008 to $390,000.00 in 2010, and that he and

13 Ms. Meyer "have no money to pay the loan."  (*Id.* ¶ 30, Ex. 14.)  On March 1, 2011, DZ

14 Bank also issued a loan invoice to Choice Insurance showing that Choice Insurance was

15 delinquent in the amount of $14,800.96 for the February 2011 payment, and that another

16 $14,792.49 was due by March 15, 2011.  (*Id.* ¶ 31, Ex. 15.)

17         On March 11, 2011, Oak Street emailed Mr. Meyer and inquired about the March

18 2011 payment.  (*Id.* ¶ 32, Ex. 16.)  Later that day, Mr. Meyer responded by stating:  "No

19

20         [3] Choice Insurance once again expressly acknowledged that DZ Bank "is the owner of
21 [Choice Insurance's] loan and all notes that [Choice Insurance] executed in connection with the
   loan," and that DZ Bank "is in possession of the Note, which gives it priority over any claims
   regarding to [sic] payments of principal and interest due under the Loan Agreement."  (Probst
22 Decl. Ex. 17.)

1   change in my situation as of yet.  Tell Bank I won't be able to make the payment."  (*Id.*)

2   Choice Insurance has admitted that it failed to make payments as required under the

3   Promissory Note.  (*See* Dkt. # 45-5 (attaching Choice Insurance's responses to requests

4   for admission) at 5, 32, 34.)

5   **K.  Procedural Posture of the Litigation**

6       On August 9, 2011, over six months after Choice Insurance made its last payment

7   under the Note, DZ Bank filed its complaint in this matter. [4]  (*See* Compl.)  On September

8   2, 2011, Choice Insurance filed an answer to the complaint.  (Ans. (Dkt. # 12).)  On

9   January 3, 2012, the court entered an order granting Choice Insurance's motion to file an

10  amended answer.  (1/3/12 Order (Dkt. # 21) at 6.)  Choice Insurance filed it amended

11  answer on January 6, 2012.  (1st Am. Ans. (Dkt. # 27).)

12      On February 9, 2012, the court entered a scheduling order setting the trial date for

13  March 4, 2013, the deadline for amended pleadings on September 5, 2012, the discovery

14  cut off on November 5, 2012, and the deadline for dispositive motions on December 4,

15  2012.  (Min. Ord. (Dkt. # 30).)

16      On July 27, 2012, Choice Insurance filed a motion for summary judgment.  In its

17  motion, Choice Insurance asserts that DZ Bank failed to abide by an alleged contractual

18  requirement to provide Choice Insurance with written notice of default, and therefore, DZ

19  Bank's complaint should be dismissed without prejudice to refiling once it has complied

20  with those notice requirements.  (*See generally* Choice Mot. (Dkt. # 41).)  On October 18,

21  _____

22  [4] Since the lawsuit was filed, Choice Insurance has made no attempt to make any
    payments under the Note.  (*See* Meyer Rule 30(b)(6) Dep. (Dkt. # 48-2) at 16:1-4.)

1    2012, DZ Bank filed its cross motion for summary judgment asserting that this case is a

2    straightforward breach of contract case based on Choice Insurance's admitted failure to

3    make payments on the Note as agreed.  (*See generally* DZ Bank Mot. (Dkt. # 45).)  In

4    response to DZ Bank's motion, Choice Insurance asserts that the Note is not negotiable,

5    and it is therefore entitled to assert as a defense to payment of the loan BCC's failure to

6    perform under the Franchise Agreement.  (Choice Resp. (Dkt. # 49) at 11-13.)

7          Finally, on November 12, 2012, after the briefing on the cross motions for

8    summary judgment was complete, Choice Insurance filed a motion for leave to file a

9    second amended answer.  (Mot. to Am. (Dkt. # 53).)  Choice seeks to amend its answer to

10   include a defense of economic duress and to assert certain counterclaims against DZ

11   Bank.  (*Id.* at 2.)

12                              **III.    ANALYSIS**

13   **A.  Summary Judgment Standards**

14         Summary judgment is appropriate if the evidence, when viewed in the light most

15   favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

16   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

17   P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*,

18   477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing

19   there is no genuine issue of material fact and that he or she is entitled to prevail as a

20   matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden,

21   then the non-moving party "must make a showing sufficient to establish a genuine

22

1   dispute of material fact regarding the existence of the essential elements of his case that

2   he must prove at trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.

3         Here, cross-motions for summary judgment are at issue.  The court "evaluate[s]

4   each motion separately, giving the nonmoving party in each instance the benefit of all

5   reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th

6   Cir. 2006) (citations omitted); *see also Friends of Columbia Gorge, Inc. v. Schafer*, 624

7   F. Supp. 2d 1253, 1263 (D. Or. 2008).

8   **B.  Choice Insurance's Motion for Summary Judgment**

9         Choice Insurance asserts that it is entitled to summary judgment and a dismissal of

10  DZ Bank's complaint without prejudice based solely on the fact that DZ Bank did not

11  provide Choice Insurance written notice of default, along with an opportunity to cure the

12  default, prior to filing its lawsuit.  (*See generally* Choice Mot.)  Choice Insurance bases

13  this argument solely on paragraph 13 of the Agreement for the Advancement of Loan.

14  (Choice Mot. at 3.)  As noted above, paragraph 13 states that DZ Bank "*may* upon written

15  notice to Borrower [Choice Insurance], declare Borrower to be in default" under certain

16  delineated circumstances, "including without limitations Borrower's failure to make

17  payments when due in accordance with the terms of the Note."  (Probst Decl. Ex. 2

18  (Agreement for Advancement of Loan) ¶ 13 (italics added).)  Choice Insurance asserts

19  that because DZ Bank did not provide it with formal written notice of default prior to

20  filing suit, its complaint must now be dismissed without prejudice to re-filing once it has

21  complied with the notice provisions of paragraph 13.  (Choice Mot. at 6-7.)

22

1    The parties agree that Kansas law applies to their dispute based on a choice-of-law

2    provision contained within the Agreement for Advancement of Loan.  (Choice Mot. at 5,

3    n.2 (citing paragraph 39); DZ Resp. (Dkt. # 48) at 13 (citing Probst Decl. Ex. 2); *see*

4    Choice Resp. (Dkt. # 49) at 6, n.4 ("Defendant agrees with Plaintiff that this controversy

5    is governed by the substantive law of Kansas State.").)  Under Kansas law, "[t]he primary

6    rule for interpreting written contracts is to ascertain the parties' intent."  *Osterhaus v.*

7    *Toth*, 249 P.3d 888, 896 (Kan. 2011).  "If the terms of the contract are clear, the intent of

8    the parties is to be determined from the language of the contract without applying rules of

9    construction."  *Id.*  Kansas courts "strive to determine the document's meaning and the

10   parties' intent from within [the contract's] four corners," and "consider, construe, and

11   harmonize the entire instrument without isolating any one particular sentence or

12   provision."  *Cent. Natural Res. v. Davis Operating Co*., 201 P.3d 680, 687 (Kan. 2009).

13   "Unambiguous contracts are enforced according to their plain, general, and common

14   meaning . . . harmonizing the language therein if possible."  *Hall v. JFW, Inc.*, 893 P.2d

15   837, 840 (Kan. Ct. App. 1995).  The legal effect of a written instrument is a matter of

16   law.  *Osterhaus*, 249 P.3d at 896; *Levin v. Maw Oil & Gas*, 234 P.3d 805, 814 (Kan.

17   2010).

18   The trouble with Choice Insurance's position, which relies entirely upon one

19   provision contained within the Agreement for the Advancement of Loan, is that it entirely

20   ignores other provisions of the contract and renders them meaningless.  It fails to

21   "harmonize the entire instrument without isolating any one particular . . . provision."  *See*

22   *Cent. Natural Res.*, 201 P.3d at 687.  As described above, the Promissory Note which is

1  expressly incorporated into the Agreement for Advancement of Loan (and vise versa)

2  provides DZ Bank with remedies upon default that do not require prior notice to Choice

3  Insurance.  (Probst Decl. Ex. 2 at 2 (Remedies section).)  Those remedies include, but are

4  not limited to, demand for the immediate payment of all principal, unpaid accrued

5  interest, and other accrued charges, as well as any remedy under federal or state law.

6  (*Id.*)  Further, under the Promissory Note, Choice Insurance has expressly waived any

7  right to notice of default, stating that it "will not require [DZ Bank] to . . . give notice that

8  amounts due have not been paid . . . ."  (*Id.*)

9          Most importantly, the Agreement for the Advancement of Loan contains an

10  "Interpretation" provision under which the parties expressly agreed that "[t]o the extent

11  that the provisions of [the Agreement for the Advancement of Loan] conflict with those

12  of any other Loan Document [which would include the Promissory Note], the provision

13  which provides [DZ Bank] most protection and grants [DZ Bank] the greatest rights shall

14  control."  (*Id.* at 36-37 (paragraph 38).)  Thus, when read together within the four corners

15  of their agreement, the material terms of the parties' Loan Agreement are clear and

16  unambiguous.  Although DZ Bank may provide Choice Insurance with notice of default

17  prior to exercising certain remedies, it is not required to do so and may instead rely upon

18  other remedies also described in the parties' agreement.  In this way, all of the provisions

19  of the parties' agreement have meaning and can be appropriately harmonized under

20  Kansas law.  The court, therefore, concludes that the Loan Agreement does not require

21  that DZ Bank provide notice of default to Choice Insurance prior to initiating this action

22  and, accordingly, denies Choice Insurance's motion for summary judgment.

1    **C.  DZ Bank's Motion for Summary Judgment**

2        Following the filing of Choice Insurance's motion for summary judgment, DZ

3    Bank cross moved for summary judgment.[5]  (*See generally* DZ Bank Mot. (Dkt. # 45).)

4    DZ Bank seeks summary judgment with respect to its claim that Choice Insurance has

5    defaulted on the parties' Loan Agreement and is in breach of contract.  As a result of

6    Choice Insurance's default and breach, DZ Bank asserts that it is entitled to a judgment

7    against Choice Insurance for $1,474.564.53 in principal, $174,454.95 in interest, and

8    $61,450.45 in attorneys' fees and costs, for a total judgment of $1,710,469.93.  (*See* DZ

9    Mot. at 18-19.)

10        Although Choice Insurance repeatedly baldly asserts that DZ Bank has breached

11    its obligations (*see, e.g.*, Choice Resp. at 11), it has presented no evidence that either

12    BCC or DZ Bank ever breached the Loan Agreement.[6]  Indeed, the undisputed evidence

13    before the court is that BCC fully performed its obligations under the Loan Agreement by

14    disbursing $1,771,715.20 toward Choice Insurance's purchase of the assets of the five

15    insurance agencies.  (Probst Decl. ¶ 15.)  Further, there is no dispute that Choice

16    Insurance was obligated under the Loan Agreement to repay the funds extended pursuant

17    to the terms of the contract (*see* Choice Resp. (Dkt. # 49) at 3 ("Having received this loan

18    of funds, [Choice Insurance] was obligated to repay the funds at a specified rate of

19

20       [5] Individual Defendants Louis and Lynn Meyer have filed for bankruptcy and therefore
are not subjects of DZ Bank's motion for summary judgment.  (*See* DZ Bank Mot. (Dkt. # 45) at

21    2, n.1.)

22       [6] The court has previously disposed of Choice Insurance's assertion that DZ Bank
breached the Loan Agreement by failing to provide written notice of default.  (*See supra* § III.B.)

1   interest.")), but failed to do so.  As delineated above, DZ Bank has submitted competent

2   evidence that beginning on February 15, 2011, Choice Insurance failed to make the

3   payments required under the Loan Agreement and has made no payments since that time.

4   (*See supra* § II.J.)  Indeed, Choice Insurance has admitted that it failed to make payments

5   as required under the Promissory Note.  (*See* Dkt. # 45-5 (attaching Choice Insurance's

6   responses to requests for admission) at 5, 32, 34.)

7        Finally, there is no genuine issue of material fact with respect to DZ Bank's

8   present ownership of the Loan Agreement.  There is undisputed evidence that BCC

9   assigned the Loan Agreement to DZ Bank.  (Probst Decl. ¶¶ 17-20, Exs. 6-7.)  In

10  addition, as noted above, Choice Insurance confirmed on at least four occasions

11  following DZ Bank's acquisition of the loan that "DZ Bank is the owner of [Choice

12  Insurance's] loan and all notes the [Choice Insurance] executed in connection with the

13  loan (collectively the Note)," and that "DZ Bank is in possession of the Note."  (*See*

14  Probst Decl. Exs. 9, 10, 11, and 17.)  Thus, unless Choice Insurance can raise a genuine

15  issue of material fact with respect to some defense for failing to make the required

16  payments under the Loan Agreement, DZ Bank has satisfied its burden and is entitled to

17  summary judgment on these facts.

18       In response, Choice Insurance asserts that the Promissory Note in possession of

19  DZ Bank is not a negotiable instrument, and Choice Insurance is therefore entitled to

20  raise any defense that it might have had against BCC with respect to payment of the Loan

21  Agreement.  (Choice Resp. (Dkt. # 49) at 6-11.)  Even assuming this were true, Choice

22  Insurance cannot escape the entry of summary judgment here.  It is not enough at the

ORDER- 17

1    summary judgment stage for Choice Insurance simply to assert that it is entitled to raise

2    defenses that it might have had against BCC.  To avoid the entry of summary judgment,

3    Choice Insurance also must demonstrate that there is a genuine issue of material fact with

4    respect to such a defense warranting a trial.  Accordingly, the burden shifts to Choice

5    Insurance to present some evidence establishing a genuine issue of material fact with

6    respect to some defense regarding the Loan Agreement that would justify its failure to

7    make the required payments.

8           Choice Insurance asserts that it is entitled to raise as defenses to DZ Bank's

9    lawsuit any claims it might have against BCC for breach of the Franchise Agreement or

10   fraud in the inducement with respect to either the Loan Agreement or the Franchise

11   Agreement.  (*See* Choice Resp. at 4, 11.)  The court will address the fraud issue first.

12   Under Kansas law, causes of action for fraud and fraudulent inducement require the

13   plaintiff to prove, by clear and convincing evidence[7], the same five elements: (1) a false

14   statement of material fact; (2) known to be false by the party making it, or made with

15   reckless disregard for the truth; (3) made with the intent to induce the other party into

16   acting upon the statement; (4) upon which the other party justifiably relied; and (5)

17   sustained damage as a direct result of such reliance.  *See Bomhoff v. Nelnet Loan*

18   *Services, Inc*., 109 P.3d 1241, 1246 (Kan. 2005) (citation omitted); *Newcastle Homes,*

19   *LLC v. Thye*, 241 P.3d 988, 998 (Kan. Ct. App. 2010).

20   _____

21        [7] *See Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004).

22

ORDER- 18

1      Choice Insurance has submitted no evidence with respect to any of the foregoing

2  elements of fraud in the inducement on the part of BCC.  The only support that Choice

3  Insurance provides is a Memorandum and Order from United States District Court for the

4  District of Kansas entering a final judgment upon a consent decree between the Security

5  and Exchange Commission ("SEC") and former senior management of BCC and other

6  entities.  (Choice Resp. at 4, Ex. B.)  In the enforcement action, the SEC alleged "massive

7  financial fraud" against the senior management of BCC.  (*Id.* Ex. B at 1.)  Nevertheless,

8  this decision from the District of Kansas does not raise a genuine issue of fact with

9  respect to fraud or fraud in the inducement on the part of BCC in this matter.  To do so,

10  Choice Insurance would have to provide at least some evidence with respect to the

11  elements of fraud listed above.  Yet, there is no such evidence—no evidence that BCC

12  made a false statement with respect to either the Loan Agreement or the Franchise

13  Agreement and no evidence that Choice Insurance relied on any such statement in

14  entering into those agreements.  Although fraud may have occurred here, it is simply not

15  enough at this stage of the proceedings for Choice Insurance to rely solely on its

16  pleadings without some evidence in support of its allegations.

17      The only evidence before the court with respect to breach of the Franchise

18  Agreement is the testimony of Mr. Meyer that BCC filed for bankruptcy and

19  subsequently breached its obligations.  (11/5/12 Meyer Decl. (Dkt. # 49-1) ¶¶ 3-5.)  Even

20  assuming this is so (and the court has no reason to doubt it), this fact does not entitle

21  Choice Insurance to avoid DZ Bank's motion for summary judgment.  Although the

22  Franchise Agreement and the Loan Agreement were executed on the same day, there is

1    no evidence that performance of one agreement was contingent upon performance of the

2    other.  Specifically, there is no evidence that Choice Insurance's performance of the Loan

3    Agreement was subject to BCC's performance of the Franchise Agreement.  As the court

4    describes above, the two contracts are separate.  Each contains separate promises and

5    separate consideration, and significantly, each contains its own integration clause.  (*See*

6    *supra* §§ II.B., II.C.)  Finally, Choice Insurance has presented no evidence subjecting DZ

7    Bank to the obligations assumed by BCC in the Franchise Agreement or demonstrating

8    that DZ Bank has any interest in the Franchise Agreement.[8]  The court concludes that

9    there is no genuine issue of material fact supporting Choice Insurance's position that

10   BBC's breach of the Franchise Agreement provides a defense with respect to its breach

11   of the Loan Agreement.  Accordingly, the court grants DZ Bank's motion for summary

12   judgment with respect to Choice Insurance's default on the Loan Agreement.

13   //

---

15   [8] Citing to K.S.A. § 60-213, Choice Insurance attempts to argue that Kansas law prevents
16   DZ Bank from bringing this action because "an assignment cannot defeat an aggrieved party's
      claim against the person who assigned the contractual rights and duties."  (Choice Resp. at 10.)
17   Not only does Choice Insurance quote a former version of K.S.A. § 60-213, but it misconstrues
      the provision as well.  K.S.A. § 60-213 is a provision of the Kansas Code of Civil Procedure
18   relating to compulsory counterclaims and cross-claims.  It governs the obligations of defendants
      to bring compulsory counterclaims and cross-claims.  It does not, in any way, prevent DZ Bank
19   from bringing its claim against Choice Insurance for default, even if DZ Bank's claim is related
      to Choice Insurance's claims against BCC.  The obligation to join the claims, if any, would fall
20   upon Choice Insurance.  Although Choice Insurance may have a right to assert any defenses with
      respect to the Loan Agreement that existed prior to the assignment in this lawsuit, as discussed
21   above, it has not provided evidence of any such defense.  To the extent that Choice Insurance
      believes it has a claim for breach of the Franchise Agreement against BCC, it could have moved
      to bring BCC into this lawsuit as a third-party defendant.  It did not do so, and has not presented
22   any evidence that DZ Bank has any responsibility with respect to the Franchise Agreement.
      Accordingly, any issues with respect to breach of that agreement are not before this court.

1      **D.  DZ Bank's Motion for Attorneys' Fees**

2          The Promissory Note provides as follows:

3          [Choice Insurance] agree[s] to pay all costs of collection, replevin or any
           other similar type of cost if [Choice Insurance is] in default.  In addition, if

4          [DZ Bank] hire[s] an attorney to collect this note, [Choice Insurance] also
           agree[s] to pay any fee [DZ Bank] incur[s] with such attorney plus court

5          costs (except where prohibited by law).

6      (Probst Decl. Ex. 2 at 2 (Collection Costs and Attorney's Fees section).)  DZ Bank

7      seeks a total of $56,673.00 in attorneys' fees and $4,777.45 in costs (for a total of

8      $61,450.45) that it expended pursuing this matter against Choice Insurance.  (*See*

9      Darcy Decl. (Dkt. # 48-6) ¶¶ 4-7.)[9]

10          Federal courts apply state law to interpret contractual attorney's fees

11     provisions.  *See Resolution Trust Corp. v. Midwest Fed. Sav. Bank*, 36 F.3d 785,

12     800 (9th Cir. 1993).  Kansas law permits any note to "provide for the payment of

13     reasonable costs of collection, including, but not limited to, court costs, [and]

14     attorney fees . . . ."  *See* K.S.A. § 58-2312.  Accordingly, DZ Bank is entitled to an

15     award of its reasonable attorneys' fees and costs here.

16          The court turns to the issue of whether the fees incurred are reasonable.  "The fee

17     applicant bears the burden of documenting the appropriate hours expended in the

18     litigation and must submit evidence in support of those hours worked."  *Welch v.*

19     *Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).  The court calculates the

20     _____

21          [9] Choice Insurance did not provide any response or opposition to DZ Bank's request for
       attorneys' fees and costs in its opposition brief.  (*See generally* Choice Resp.)  When a party fails

22     to respond, the court may consider such failure as an admission that the opposing party's position
       has merit.  *See* Local Rules W.D. Wash, CR 7(b)(2).

1  fee award by applying the lodestar method.  *Id.* at 433.  Under this approach, the court

2  first determines a lodestar figure by multiplying the number of hours reasonably spent on

3  the litigation by a reasonable hourly rate.  *See id.*  The court "may then adjust this

4  lodestar calculation by other factors."  *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).

5        The reasonable hourly rate corresponds to the prevailing market rate in the

6  relevant community, considering the experience, skill, and reputation of the attorney in

7  question.  *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986) *amended on*

8  *other grounds*, 808 F.2d 1373 (1987).  DZ Bank has submitted an affidavit from one of

9  its attorneys, Alex Darcy, briefly describing the qualifications and experience of the

10  individuals who worked on the case.  (Darcy Decl. ¶ 4.)  Choice Insurance has not

11  objected to the hourly rates of these attorneys.  Given the lack of objections by Choice

12  Insurance, and the testimony that the rates charged "are within the normal standards of

13  the legal community for the type of services performed" (*id.* ¶ 8), the court finds that the

14  rates DZ Bank's attorneys charged are reasonable.

15        In calculating reasonable attorney fees, the court may also consider the following

16  factors:  (1) the time and labor required, (2) the novelty and difficulty of the questions

17  involved, (3) the skill necessary to perform the legal services properly, (4) the preclusion

18  of other employment by the attorney due to acceptance of the case, (5) the customary fee,

19  (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or

20  circumstances, (8) the amount involved and the results obtained, (9) the experience,

21  reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the

22  nature and length of the professional relations with the client, and (12) awards in similar

1   cases. *LaFarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d

2   1334, 1341-42 (9th Cir. 1986) (citing *Kerr v. Screen Extra Guild, Inc.*, 526 F.2d 67,

3   69-70 (9th Cir. 1975).  The court need not apply every factor in every case, but rather

4   only those factors that are relevant to the particular case.  *See Kerr*, 526 F.2d at 70;

5   *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 838 (9th Cir. 1982).

6        DZ Bank submitted a detailed billing record with respect to this matter.  (Darcy

7   Decl. Ex. 1.) The court has reviewed this record with the foregoing factors in mind.  The

8   factors that that the court finds to be particularly relevant to this case include the time and

9   labor involved, the difficulty of the questions, and the amount involved and results

10   obtained.  Based on these factors, the court finds that the amount of attorneys' fees and

11   costs requested by DZ Bank is reasonable.  Accordingly, the court grants DZ Bank's

12   motion for an award of attorneys' fees and costs in this matter in a total amount of

13   $61,450.45.

14   **E.  Choice Insurance's Motion for Leave to File a Second Amended Answer and Counterclaims**

15

16        On November 12, 2012, after the parties had fully briefed their cross motions for

17   summary judgment, after the September 5, 2012, deadline for amending pleadings had

18   expired (*see* Min. Ord.), and after the November 5, 2012, discovery cut-off had passed

19   (*see id.*), Choice Insurance filed a motion for leave to file a second amended answer.

20   Choice Insurance's motion includes a request to amend its answer to include a defense of

21   economic duress and certain counterclaims against DZ Bank.  (*See* Mot. to Am. at 2)

22

1        Choice Insurance asserts that the court should grant its motion pursuant to the

2   liberal standard established in Federal Rule of Civil Procedure 15(a)(2), which states that

3   a "court should freely give leave [to amend a pleading] when justice so requires."  (Mot.

4   to Am. at 3 (quoting Fed. R. Civ. P. 15(a)(2)).)  Due to the procedural posture of this

5   case, however, this is not the standard that the court applies here.  Rule 16 provides that

6   once the court enters a scheduling order it "may be modified only for good cause and

7   with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Thus, the "good cause" standard of

8   Rule 16 governs Choice Insurance's motion to amend and not the more liberal Rule 15

9   standard.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir.

10   1992) ("Once the district court had filed a pretrial scheduling order pursuant to Federal

11   Rule of Civil Procedure 16 which established a timetable for amending pleadings that

12   rule's standards controlled.").

13        The Ninth Circuit explained the "good cause" standard as follows:

14        Rule 16(b)'s "good cause" standard primarily considers the diligence
         of the party seeking the amendment.  The district court may modify
15        the pretrial schedule "if it cannot reasonably be met despite the
         diligence of the party seeking the extension."  Moreover, carelessness
16        is not compatible with a finding of diligence and offers no reason for a
         grant of relief.  Although the existence or degree of prejudice to the
17        party opposing the modification might supply additional reasons to
         deny a motion, the focus of the inquiry is upon the moving party's
18        reasons for seeking modification.  If that party was not diligent, the
         inquiry should end.

19
   *Id.* at 609 (citations omitted); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080,
20
   1087 (9th Cir. 2002).
21

22

ORDER- 24

1    Choice Insurance has not demonstrated good cause in support of its motion to

2    amend at this late date as required by Rule 16(b).  Specifically, Choice Insurance fails to

3    explain why it could not meet the September 5, 2012, deadline through reasonable

4    diligence.  The alleged conduct about which Choice Insurance complains, and which

5    forms the basis for its defense of economic defense and the counterclaims, occurred in

6    2008.  In any event, Choice Insurance has provided no explanation as to why it could not

7    have amended its answer earlier.  (*See generally* Mot. to Am.)  As the Ninth Circuit

8    teaches, absent a showing of diligence, "the inquiry should end" and the court need

9    inquire no further.  *Id*.  Choice Insurance's failure to demonstrate reasonable diligence

10   requires the court to deny the motion to amend.  In addition, the court is mindful that

11   Choice Insurance seeks to amend on the brink of trial and after the deadline for filing

12   dispositive motions.  These considerations weigh against granting the motion to amend.

13   Therefore, the court denies Choice Insurance's motion to amend.

14   **IV.    CONCLUSION**

15   Based on the foregoing, the court DENIES Choice Insurance's motion for

16   summary judgment (Dkt. # 41) and its motion for leave to amend its first amended

17   answer (Dkt. # 53).  The court GRANTS DZ Bank's motion for summary judgment (Dkt.

18   # 45), and will enter judgment against Choice Insurance and in favor of DZ Bank for

19   //

20   //

21   //

22   //

1    $1,474,564.53 in principal, $174,454.95 in interest, and $61,450.45 in attorneys' fees and

2    costs, for a total judgment of $1,710,469.93.

3          Dated this 14th day of January, 2013.

4

5          _____

6          JAMES L. ROBART
           United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 26