UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DZ BANK AG DEUTSCHE ZENTRAL GENOSSENSCHAFTBANK, FRANKFURT AM MAIN,<br><br>Plaintiff,<br><br>v.<br><br>CHOICE CASH ADVANCE, LLC, et al.,<br><br>Defendants. | CASE NO. C11-1312JLR<br><br>ORDER DENYING DEFENDANT'S FEDERAL RULE OF CIVIL PROCEDURE 59 MOTION FOR RELIEF FROM JUDGMENT |

## I. INTRODUCTION

Before the court is Defendant Choice Cash Advance, LLC's ("Choice") Federal Rule of Civil Procedure 59(e) motion for relief from judgment (Dkt. # 68). Having reviewed the motion, all submissions filed in support and opposition thereto, the balance of the record, and the applicable law, and being fully advised, the court DENIES the motion.

ORDER- 1

## II. BACKGROUND

On January 14, 2013, the court entered an order denying Choice's motions for partial summary judgment (Dkt. # 41) and for leave to file a second amended answer (Dkt. # 53) and granting Plaintiff DZ Bank AG Deutsche Zentral-Genossenschaftbank, Frankfurt AM Main, New York Branch's ("DZ Bank") motion for summary judgment (Dkt. # 45). (*See* SJ Order (Dkt. # 57).) The factual background to this dispute is set forth in that order, and the court will not repeat it here. (*See id.* at 2-12.)

On March 1, 2013, the court granted DZ Bank's motion for a Federal Rule of Civil Procedure 54(b) judgment (3/1/13 Order (Dkt. # 65)), and on March 5, 2013, the court entered a Rule 54(b) judgment against Choice (Judg. (Dkt. # 66)). On April 2, 2013, Choice filed a motion for relief from the judgment pursuant to Federal Rule of Civil Procedure 59. (Mot. (Dkt. # 68).)

## III. ANALYSIS

### A. Standards

A district court has considerable discretion when considering a motion to alter or amend a judgment under Rule 59(e). *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). "Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal citations and quotation marks omitted). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of

judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (quotation marks and citation omitted); *see also Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (stating that Rule 59(e) motion "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation").

There are four grounds upon which a Rule 59(e) motion may be granted: 1) to correct manifest errors of law or fact upon which the judgment is based; 2) on the basis of newly discovered or previously unavailable evidence; 3) to prevent manifest injustice; or 4) on the basis of an intervening change in controlling law. *Turner*, 338 F.3d at 1063. Demonstrating one of these four reasons for reopening a judgment is a "high hurdle." *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001). Judgment is not properly altered or amended "absent highly unusual circumstances." *Id*.

**B. Exhibit I**

In its order with respect to the parties' motions for summary judgment, the court stated:

> Although the Franchise Agreement and the Loan Agreement were executed on the same day, there is no evidence that performance of one agreement was contingent upon performance of the other. Specifically, there is no evidence that Choice Insurance's performance of the Loan Agreement was subject to BCC's [Brooke Capital Corporation's] performance of the Franchise Agreement. As the court describes above, the two contracts are separate. Each contains separate promises and separate consideration, and significantly, each contains its own integration clause. . . . Finally, Choice Insurance has presented no evidence subjecting DZ Bank to the obligations assumed by BCC in the Franchise Agreement or demonstrating that DZ Bank has any interest in the Franchise Agreement.

ORDER- 3

(SJ Order at 19-20.) Choice has identified a document entitled "Exhibit I," which it asserts "inextricably links the Note [or Loan Agreement] to the Franchise Agreement." (Mot. at 6.) On this basis, Choice asserts that the court's finding that the two contracts are separate was in error. (*See id.* at 5-6.)

The failure to file documents in an original motion or opposition does not turn the late filed documents into "newly discovered evidence." *See School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citing *Waltman v. International Paper Co.*, 875 F.2d 468, 473-74 (5th Cir. 1989) (materials available at time of filing opposition to summary judgment would not be considered with motion for reconsideration); *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1557 & n. 4 (9th Cir. 1987) (court did not abuse its discretion in refusing to consider affidavits opposing summary judgment filed late); *Frederick S. Wyle Professional Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (evidence available to party before it filed its opposition was not "newly discovered evidence" warranting reconsideration of summary judgment)). To prevail on a Rule 59(e) motion because of newly discovered evidence, the movant must show the evidence (1) existed at the time of the trial or proceeding at which the ruling now protested was entered; (2) could not have been discovered through due diligence; and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case. *Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 211-12 (9th Cir. 1987).

Choice fails to demonstrate that Exhibit I represents newly discovered or previously unavailable evidence as required for a motion under Rule 59(e). At most,

ORDER- 4

Choice complains that it "only recently discovered that DZ Bank, intentionally or unintentionally, in all its submissions to this Court, omitted Exhibit I." (Mot. at 6; 4/2/13 Meyer Decl. (Dkt. # 69) ¶ 11 (Exhibit I "has not been submitted by DZ Bank in this proceeding.").) Yet, Choice never explains why it could not have submitted this document to the court itself in response to DZ Bank's motion for summary judgment. Indeed, Plaintiff Louis Meyer, who was the sole member and manage of Choice (*see* Compl. (Dkt. # 1) ¶ 5; Am. Ans. (Dkt. # 27) ¶ 5 (admitting allegations contained within paragraph 5 of complaint); Meyer Dep. (Dkt. # 48-1) at 14:11-18)), signed Exhibit I on behalf of Choice (*see* 4/2/13 Meyer Decl. Ex. 2 at 5). Thus, it is indisputable that Choice had notice of Exhibit I at the time DZ Bank filed its motion for summary judgment and at the time DZ Bank filed this lawsuit. Choice, therefore, has failed to demonstrate that Exhibit I could not have been discovered through due diligence prior to the time the court entered its ruling on summary judgment.

     Further, Choice has failed to demonstrate that the import of Exhibit I is of such magnitude that its earlier production would have likely changed the disposition of this case. From the face of Exhibit I, it appears that this document has been made a part of both the Franchise Agreement and the Loan Agreement. (*See id.* at 1.) The document contains a statement at the top of the first page which states: "Exhibit I to Agreement for Advancement of Loan." (*Id.*) As indicated in the court's order on summary judgment, the Agreement for Advancement of Loan ("AAL") is one of the documents that comprise the Loan Agreement at issue here. (*See* SJ Order at 3-4.) The AAL expressly defines the loan documents to include Exhibit I. (*See* Choice SJ Mot. (Dkt. # 41) Ex. A (Dkt. # 41-1)

1  ("AAL") at 3 (defining "Loan Documents" to include "documents referenced in
2  paragraphs 1 through 11 herein"); *id.* at 5 ¶ 8 (listing Exhibit I).)  In addition, Exhibit I
3  recites that it "is made to and a part of the Franchise Agreement . . . dated January 31,
4  2008, by and between Choice . . . and Brooke Capital Corporation."  (Myer Decl. Ex. 2 at
5  1.)  Thus, Choice is correct that Exhibit I has been incorporated into both the Loan
6  Agreement between Choice and Brooke Credit Corporation and the Franchise Agreement
7  between Choice and Brooke Capital Corporation.  The mere fact that Exhibit I has been
8  incorporated into both agreements, however, does not render the integration clauses of
9  each agreement null and void or the court's finding—that the obligations contained in the
10 two contracts are separate—clearly erroneous.  Choice has provided no authority for the
11 proposition that the incorporation of one exhibit into two separate contracts renders the
12 contracts' integration clauses null and void or somehow merges the contracts into one
13 agreement, and the court is aware of none.
14         Choice also asserts that the definition of "Loan Documents" in the AAL includes
15 "all other . . . contracts, . . . subordination agreements, . . . and all other written
16 documents" between the parties, and that this definition would include the Franchise
17 Agreement. (*See* Mot. at 5-6; Myers Decl. ¶¶ 13-14; Choice SJ Mot. Ex. A ("AAL") at
18 3.)  However, the definition of "Loan Documents" is limited to those documents
19 "executed by and/or on behalf of Borrower and delivered to Lender."  (*Id.*)  The "Lender"
20 is expressly defined as Brooke Credit Corporation d/b/a Aleritas Capital (*id.* at 1) and "its
21 successors, assigns or designees" (*id.* at 2).  In this litigation, DZ bank stands in the shoes
22

of Brooke Credit Corporation.[1]  The Franchise Agreement, however, is entered into by Choice and Brooke Capital Corporation, which is a different entity than Brooke Credit Corporation.  Thus, the definition of "Loan Documents" in the AAL cannot be construed to include the Franchise Agreement.

As DZ Bank points out, Exhibit I serves the limited purpose of confirming the Lender's security interest (or DZ Bank's security interest as it stands in the shoes of Brooke Credit Corporation) in Choice's agency assets.  Thus, the impact of Exhibit I is merely to ease the ability of the Lender to collect on the assets represented in the Franchise Agreement in the event Choice were to default under the Loan Agreement.  The court concludes that Choice has failed to establish that Exhibit I is either newly discovered evidence that could not have been discovered earlier through due diligence or of such magnitude that production of it earlier would have been likely to change the disposition of this case.  Accordingly, the court concludes that Exhibit I does not represent grounds for amending or altering the judgment.

**C.  "New" Legal Authority**

Choice also cites to "new" legal authority.  All of the decisions Choice cites, however, were available at the time Choice filed its response to DZ Bank's motion for summary judgment.  Thus, they do not constitute an intervening change in controlling

---

[1] As described in the court's order on summary judgment, DZ Bank is the assignee and owner of Choice's loan from Brooke Credit Corporation.  (SJ Order at 6-7, §§ II.F. & II.G.)

1  law.  More importantly, all are unpublished and distinguishable from the circumstances at
2  hand.

3       First, Choice relies upon *Tri-State Truck Insurance v. First National Bank of*
4  *Wamego*, No. 09-4158, 2011 WL 3349153 (D. Kan. Aug. 3, 2011).  *Tri-State* is based on
5  a Pennsylvania trial court's default judgment, which found that Aleritas (f/k/a Brooke
6  Credit) had procured Tri-State's loans by fraud and granted rescission of the loans.  *Id.* at
7  *7.  Tri-State then sought a declaratory judgment in federal district court in Kansas
8  against First National Bank of Wamego ("FNBW") that Tri-State owned no obligation to
9  pay FNBW under the rescinded loans, *id.* at *7-*8, and the Kansas federal district court
10 agreed, *id.* at *15.

11      Importantly, however, the assignment at issue in *Tri-State* was different than the
12 one at issue here.  FNBW's right to enforce the Tri-State's loans was based solely on its
13 status as an 8.520% participation interest holder and loan servicer.  *Id.* at * 2.  In selling
14 participation to FNBW, "Aleritas did not transfer any legal ownership interest in the
15 loans." *Id.* at *10.  Rather, Aleritas retained ownership of the loans and only assigned
16 certain specific rights and administrative duties to the assignee. *Id.* at *15.  Thus, FNBW
17 has no contractual relationship with the borrower, either directly or through assignment.
18 *See Unicredit Bank AG, N.Y. Branch v. Deborah R. Eastman, Inc.*, No. 12-2249-JTM,
19 2013 WL 237810, at *5 (D. Kan. Jan. 22, 2013) (discussing *Tri-State*).  This is different
20 from the case at hand in which the court found that DZ Bank is the assignee and owner of
21 Choice's Loan from Brooke Credit Corporation.  (SJ Order at 6-7, §§ II.F. & II.G.)
22 Further, even if the court were to ignore that the underlying Pennsylvania court's ruling

with respect to fraud was determined in a default judgment, the fact that a court determined that fraud occurred in the *Tri-State* loan transaction does not prove fraud in this transaction. Thus, the ruling in *Tri-State* is inapplicable to the facts before this court and does not justify any modification of the judgment.[2]

In its reply memorandum, Choice also relies upon *DZ Bank v. McCranie*, No. 11-14618, 2013 WL 1159096 (11th Cir. Mar. 21, 2013). (Reply (Dkt. # 74) at 2-3.) Choice argues that this unpublished Eleventh Circuit decision supports its assertion that DZ Bank was not a holder in due course of the note at issue. (*Id.*) *McCanie*, however, is also distinguishable. In *McCranie*, two competing creditors, one of which was DZ Bank, were contending that they were each entitled to payment from the defendant on the loan. Indeed, the defendant had received demands from both creditors attempting to collect. *McCranie*, 2013 WL 1159096, at *1. Although the district court had granted summary judgment to DZ Bank, the Eleventh Circuit held that, in light of the competing claims, the evidence of assignment to DZ Bank was too insubstantial to base a finding on summary judgment that DZ Bank owned the note and was the holder in due course. *Id.* at *3. Here, there are no competing claims to ownership of the loan in question, nor has Choice presented any evidence in contravention of DZ Bank's evidence demonstrating a chain of

---

[2] Choice's reliance on the underlying arbitration in *West Point Underwriters, LLC v. Aleritas Capial Corp.*, No. No. 12-0205, 2012 WL 4049807 (D. Kan. Sept. 13. 2012), is also unavailing. First, the underlying arbitration "was wholly ex parte. The defunct Aleritas made no appearance." *Id.* at *2. More importantly, as noted above, the fact that an arbitrator found that Aleritas procured a loan by fraud in the underlying *West Point* arbitration does not establish fraud with respect to the loan at issue here.

assignments leading back to Brooke Credit. (*See* SJ Order at 6-7, §§ II.F. & II.G.) Further, unlike the facts in *McCranie*, Choice executed acknowledgement of its obligation to DZ Bank under the Loan Agreement, and multiple forbearance agreements acknowledging DZ Bank's ownership of the loan. (*Id.* at 8-9, §§ II.H. & II.I.) Thus, *McCranie* is inapplicable here.[3]

### D. "New" Evidence Concerning Fraud and Breach of the Franchise Agreement

In its motion to alter or amend the judgment, Choice presents a new declaration from Mr. Meyer, which Choice relies upon to bolster its defenses of fraud in the inducement and breach of the Franchise Agreement. (*See* 4/2/13 Meyer Decl.) Mr. Meyer's new declaration consists of 102 paragraphs and attaches 16 documents. (*See generally id.*)

With respect to the parties' cross-motions for summary judgment in this matter, Defendants originally submitted two declarations from Mr. Meyer. The first such declaration (in support of Defendants' motion for partial summary judgment) consists of two paragraphs and simply stated that Mr. Meyer was the only individual to ever serve as the member-manager of Choice, which is now defunct (*see* 7/27/12 Meyer Decl. (Dkt. # 41-2) ¶ 1), and that Mr. Meyer had never received a notice of default on the Loan

---

[3] DZ Bank filed a surreply in which it moved to strike the section of Choice's reply memorandum which relied upon *McCranie*. (Surreply (Dkt. # 77).) Because DZ Bank did, in fact, provide a substantive response to the *McCranie* decision in its surreply, it was not prejudiced by Choice's citation to the *McCranie* decision for the first time in its reply memorandum. (*See id.*) Accordingly, the court DENIES DZ Bank's motion to strike a portion of Choice's reply memorandum.

ORDER- 10

Agreement (*id.* ¶ 2). Choice submitted a second declaration from Mr. Meyer in response to DZ Bank's motion for summary judgment. (*See* 11/5/12 Meyer Decl. (Dkt. # 49-1).) This declaration consists of only eleven paragraphs. (*See generally id.*) The second declaration states that Brooke Capital breached the Franchise Agreement when it declared bankruptcy (*id.* ¶ 5), and that the bankruptcy filings had a "devastating effect" on Choice (*id.* ¶ 4). The remainder of the declaration deals with Mr. Meyer's expectations concerning a notice of default from DZ Bank, his failure to receive any such notice, and his view of the effect that a lack of default notice had upon his negotiations with DZ Bank. (*Id.* ¶¶ 6-11.) Neither declaration provides a basis for denying DZ Bank's motion for summary judgment on the basis of Choice's affirmative defense of fraud in the inducement or breach of the Franchise Agreement. (*See* SJ Order at 16-20.)

       Choice nevertheless asserts that it did present evidence of fraud in the inducement in the form of an order from the United States District Court for the District of Kansas entering final judgment upon a consent decree between the Security and Exchange Commission ("SEC") and former management of various Brooke entities, and that it was error for the court to grant summary judgment to DZ Bank in light of this order. (*See* Mot. at 6-7.) The order, however, does not establish the existence of fraud in this matter, nor did Choice present any evidence with respect to the summary judgment motions linking the fraud in Kansas matter to what occurred here.

       Because DZ Bank sufficiently demonstrated on summary judgment each aspect of its claim with respect to the Loan Agreement (*see* SJ Order at 16-17), and because Choice bears the burden of proof with respect to its affirmative defenses, to defeat DZ Bank's

ORDER- 11

1  motion for summary judgment, Choice was required to demonstrate sufficient evidence to
2  raise a genuine issue of material fact as to all essential elements of its defense of fraud in
3  the inducement.  *See Campbell v. Pricewaterhouse-Coopers, LLP*, 642 F.3d 820, 825 (9th
4  Cir. 2011).  Under Kansas law, causes of action for fraud and fraudulent inducement
5  require the plaintiff to prove, by clear and convincing evidence[4], five elements:  (1) a
6  false statement of material fact; (2) known to be false by the party making it, or made
7  with reckless disregard for the truth; (3) made with the intent to induce the other party
8  into acting upon the statement; (4) upon which the other party justifiably relied; and (5)
9  sustained damage as a direct result of such reliance.  *See Bomhoff v. Nelnet Loan
10 Services, Inc.*, 109 P.3d 1241, 1246 (Kan. 2005) (citation omitted); *Newcastle Homes,
11 LLC v. Thye*, 241 P.3d 988, 998 (Kan. Ct. App. 2010).  None of the declarations Choice
12 presented from Mr. Meyer with respect to the motions on summary judgment, nor the
13 order of the Kansas district court with respect to the SEC consent decree, suffice to raise
14 a genuine issue of material fact with respect to each of these elements.  Further, Choice
15 never presents evidence linking the fraud in the Kansas action to its particular transaction
16 with the Brooke entities or evidence raising a material issue of fact with respect to each
17 specific elements of fraud in the inducement here.
18      Choice further asserts, however, that "[t]he various Brooke agreements showing
19 Brooke's many representations were also before the Court."  (Mot. at 7.)  The fact of the
20
21     [4] *See Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004).
22

ORDER- 12

existence and terms of agreements themselves, however, does not prove the necessary elements of fraud delineated above, such as a false statement, made with the intent to induce Choice to act, and Choice's justifiable reliance thereupon.

Choice, nevertheless, tries to revive its defense of fraud in the inducement and its defense based on breach of the Franchise Agreement by filing a new, far more detailed, declaration from Mr. Meyer. (*See generally* 4/2/13 Meyer Decl.) Significantly, Choice never explains why it did not or could not have presented this evidence earlier in conjunction with its briefing on the parties' motions for summary judgment. (*See generally* Mot.) "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n. 5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127-28 (2d ed. 1995)). Thus, the court declines to consider this evidence now.

### E. "New" Evidence of Duress

Following the parties' submission of their cross-motions for summary judgment, and after the deadline for amended pleadings had expired, Choice filed a motion seeking to file a second amended answer alleging a counterclaim for economic duress with respect to its execution of the acknowledgement of its indebtedness to DZ Bank. (*See* Mot. to Amend (Dkt. # 53).) The court denied Choice's motion because Choice had failed to demonstrate "good cause" for the amendment or diligence in seeking it as required by Federal Rule of Civil Procedure 16(b). (*See* SJ Order at 24-25.) Choice now

asserts that granting summary judgment to DZ Bank based in part on Choice's acknowledgement of its obligations to DZ Bank is manifestly unjust. (Mot. at 9-12.)

Initially, the parties dispute whether or not Choice raised its duress defense in its first amended answer or not. Choice points to a paragraph in its first amended answer in which it avers that it "signed the acknowledgement and agreement under duress, and after having been threatened by Plaintiff's senior vice president, Mr. Patrick Preece." (*See* 4/2/13 Meyer Decl. ¶ 75 (citing 1st Am. Ans. (Dkt. # 27) ¶ 17).) DZ Bank asserts that this statement does not constitute an affirmative defense and that Choice's motion for leave to file a second amended complaint in order to allege an affirmative defense of duress would have been superfluous if Choice had already alleged the affirmative defense in its first amended answer. (Resp. at 11-12.) The court need not resolve this issue, however, because even if Choice had alleged duress in its first amended answer, it is not entitled to alteration or amendment of the judgment on the basis of this defense. Choice never raised duress in response to DZ Bank's motion for summary judgment (*see generally* Choice Resp. (Dkt. # 49)), and therefore the court was under no obligation to consider it.[5] *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001) ("[T]he district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein."); *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) ("We

---

[5] Although Choice submitted a declaration from Mr. Meyer concerning duress in support of its motion to file a second amended answer (*see* 11/12/12 Meyer Decl. (Dkt. # 53-2)), Choice never submitted this evidence with respect to the motions for summary judgment.

1 | will not reverse a district court's grant of summary judgment unless the party opposing
2 | the summary judgment motion has identified the evidence establishing a genuine issue of
3 | material fact in its opposition to summary judgment.").

4 | Like its defense for fraud in the inducement, Choice also attempts to revive its
5 | defense for duress by submitting the much more detailed declaration of Mr. Meyer in
6 | conjunction with its present motion. (*See* 4/2/13 Meyers Decl. ¶¶ 75-85 (discussing the
7 | acknowledgement).) As discussed in detail above, Choice never explains why it did not
8 | or could not have presented this evidence in conjunction with the motions for summary
9 | judgment, and Choice is not entitled to re-litigate this issue under the guise of Rule 59(e)
10 | motion. Thus, the court declines to consider this additional evidence now.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that Choice has failed to demonstrate that the judgment should be amended or altered based on manifest errors of law or fact, newly discovered or previously unavailable evidence, an intervening change in controlling law, or to prevent manifest injustice. Accordingly, the court DENIES Choices' Rule 59(e) motion (Dkt. # 68).

Dated this 11th day of June, 2013.

*[signature]*

JAMES L. ROBART
United States District Judge

ORDER- 15